IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| PAMELA M. EASTRIDGE<br>as Executrix of the Estate of<br>Joseph E. Morris, Jr. | )<br>)<br>) | CASE NO. 3:12-cv-00862-CRS |
| | ) | JUDGE CHARLES R. SIMPSON, III |
| Plaintiff, | )<br>) | |
| v. | )<br>) | |
| GOODRICH CORPORATION, et al., | )<br>) | |
| Defendants. | )<br>)<br>) | |

---

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS
AMERICAN CHEMISTRY COUNCIL, GEORGIA GULF CORP.,
GOODRICH CORP., POLYONE CORP., PPG INDUSTRIES, INC. AND SHELL OIL CO.**

**(ORAL ARGUMENT REQUESTED)**

---

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

LAW AND ARGUMENT ........................................................................................................ 3

I.    Plaintiff's Product Liability Claims Fail............................................................................5

      A.    Plaintiff's Product Liability Claims Against Goodrich Are Barred by Statute. ............5

      B.    Plaintiff Fails to Allege Which Defendant and Which Product Allegedly In-
            jured Decedent. ........................................................................................................6

      C.    Plaintiff's Claims for "Strict Liability" Fail. ............................................................11

II.   Plaintiff Fails To State a Valid Claim For Employer Intentional Tort Against
      Goodrich. ......................................................................................................................11

III.  Plaintiff Fails to State a Claim for "Outrage." ...................................................................14

IV.   Plaintiff Fails To State a Claim For Conspiracy. ..............................................................16

      A.    Plaintiff's Conspiracy Claim Fails for Lack of an Underlying  Intentional Tort.........17

            1.    There is No Viable Fraud Claim to Stand as the  Underlying Intentional
                  Tort............................................................................................................19

                  a.    Any claim for fraud is time-barred. ..................................................19

                  b.    Any claim for fraud fails for lack of particularity  under Rule
                        (9)(b). ...........................................................................................21

            2.    Battery Cannot be the Underlying Tort to Support  the Alleged Conspir-
                  acy.............................................................................................................22

                  a.    Plaintiff's rote allegation of "intent" fails...................................23

                  b.    Plaintiff's claim for battery is time-barred...................................24

                  c.    The tort of battery does not encompass chemical "touching" via a
                        manufacturing process. .................................................................25

            3.    No Other Claim Can be the Underlying Intentional Tort. ..........................26

      B.    The Conspiracy Claim Also Fails Because Plaintiff Fails to Identify  Particu-
            lar Defendants and their Alleged Role in the Conspiracy............................................27

      C.    The Conspiracy Claim Should be Dismissed for Plaintiff's Failure  to Plead
            with Particularity................................................................................................28

      D.    Plaintiff's Conspiracy Claim Is Time-Barred................................................................29

V.    Plaintiff's "Claim" for Punitive Damages Fails................................................................30

CONCLUSION ......................................................................................................................... 30

## TABLE OF AUTHORITIES

*Adkins v. R&S Body Co.*, 58 S.W.3d 428 (Ky. 2001) .................................................. 12

*Albrecht v. Treon*, 617 F.3d 890 (6th Cir. 2010) .................................................... 4, 7

*Ammon v. Welty*, 113 S.W.3d 185 (Ky. Ct. App. 2002) .......................................... 30

*Anderson v. Airco, Inc.*, 2004 Del. Super. LEXIS 393 (Del. Super. Ct. Nov. 30, 2004).............. 18

*Anderson v. Pine South Capital, LLC*, 177 F. Supp. 2d 591 (W.D. Ky. 2001) ..................... 21, 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 4, 7, 10, 23

*Avery v. G & S Vending, Inc.*, 2005 U.S. Dist. LEXIS 20483 (E.D. Ky. Sept. 19, 2005)........... 24

*Banks v. Fritsch*, 39 S.W.3d 474 (Ky. Ct. App. 2001) .............................................. 15

*Barnette v. Grizzly Processing, LLC*, 809 F. Supp. 2d 636 (E.D. Ky. 2011) ....................... 23, 24

*Bassett v. NCAA*, 2005 U.S. Dist. LEXIS 17570 (E.D. Ky. May 3, 2005).................................. 29

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... passim

*Bellith v. Allied Signal*, No. BC 285147 (Cal. Super. Ct. Apr. 9, 2003)............................ 9, 10, 18

*Bogner v. Airco, Inc.*, 2003 U.S. Dist. LEXIS 26890 (C.D. Ill. Apr. 3, 2003)............................ 18

*Borman v. Interlake, Inc.*, 623 S.W.2d 912 (Ky. Ct. App. 1981) .................................... 6

*Bowden v. City of Franklin*, 13 Fed. Appx. 266 (6th Cir. 2001) ................................... 19

*Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527 (6th Cir 1999)............................. 12

*C&S Fuel, Inc. v. Clark Equip. Co.*, 552 F. Supp. 340 (E.D. Ky. 1982)........................ 7

*Combs v. Int'l Ins. Co.*, 354 F.3d 568 (6th Cir. 2004) .............................................. 25

*Criss v. Air Prods. & Chems., Inc.*, No. CV-04-540828 (Cuyahoga Cty. (Ohio) C.P. April 22, 2005) .............................................................................. 19

*Crutcher v. Gen. Elec. Co.*, 2011 U.S. Dist. LEXIS 42537 (W.D. Ky. Apr. 19, 2011) ................ 4

*Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 865 F. Supp. 2d 904 (E.D. Ky. 2012) .............................................................................. 8, 25

*Davenport's Adm'x. v. Crummies Creek Coal Co.*, 184 S.W.2d 887 (Ky. Ct. App. 1945).......... 17

*Davric Maine Corp. v. Rancourt*, 216 F.3d 143 (1st Cir. 2000).................................. 27

*Dawson v. Bristol Labs.*, 658 F. Supp. 1036 (W.D. Ky. 1987) .................................... 8

*Dealers Transport Co. v. Battery Distrib. Co.*, 402 S.W.2d 441 (Ky. 1965) .................... 7

*DirectTV, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007)............................................ 4

*Dist. Union Local 227 v. Fleischaker*, 384 S.W.2d 68 (Ky. Ct. App. 1964). ................... 29

*Dunn v. Felty*, 2005 Ky. App. Unpub. LEXIS 80 (Ky. Ct. App. April 1, 2005), *aff'd*, 226 S.W.2d 68 (Ky. 12007) ........................................................ 24, 25

*Eastern R.R. Presidents Conf. v. Noerr Motor Freight*, 365 U.S. 127 (1961) ............................ 26

*Farmer v. City of Newport*, 748 S.W.2d 162 (Ky. Ct. App. 1988) ................................................. 8

*Gonzalez v. Am. Home Prods. Corp.*, 223 F. Supp. 2d 803 (S.D. Tex. 2002) .............................. 17

*Gordon v. Louisville/Jefferson County Metro Gvt.*, 2012 U.S. App. LEXIS 13417 (6th Cir. June 28, 2012) ................................................................................................................... 28

*Gregory v. Shelby County*, 220 F.3d 433 (6th Cir. 2000) ............................................................. 4

*Helton v. Tri-County Cycles Barbourville, LLC*, 2010 Ky. App. LEXIS 47 (Ky. Ct. App. Feb. 19, 2010) ........................................................................................................................... 6

*Hogan v. Goodrich Corp.*, 2006 U.S. Dist. LEXIS 2004 (W.D. Ky. Jan. 17, 2006) ......................................................................................... 1, 10, 17, 19, 20, 26, passim

*Jackson v. Murray State Univ.*, 2012 U.S. Dist. LEXIS 120480 (W.D. Ky. Aug. 24, 2012) ....... 25

*Johnson v. Fetter*, 7 S.W.2d 241 (Ky. 1928) .............................................................................. 20

*Kerman v. Chenery Assocs., Inc.*, 2011 U.S. Dist. LEXIS 30164 (W.D. Ky. Mar. 22, 2011) ............................................................................................................................................. 4

*Lewis v. Airco, Inc.*, 2011 N.J. Super. Unpub. LEXIS 1914 (N.J. Ct. App. July 15, 2011) ......... 26

*Liquidating Tr. v. Energy Coal Res., Inc. (In re Appalachian Fuels, LLC)*, 2012 Bankr. LEXIS 4290 (Bankr. E.D. Ky. Sept. 14, 2012) ......................................................................... 29

*Lovins v. Hurt*, 2011 U.S. Dist. LEXIS 132151 (E.D. Ky. Nov. 16, 2011) ............................ 14, 15

*Madison County v. Arnett*, 360 S.W.2d 208 (Ky. 1962) .............................................................. 20

*Meade v. Arnold*, 643 F. Supp. 2d 913 (E.D. Ky. 2009) ............................................................. 12

*Monsanto Co. v. Reed*, 950 S.W.2d 811 (Ky. 1997) .................................................................... 11

*Moore v. Envtl. Constr. Corp.*, 147 S.W.3d 13 (Ky. 2004) ......................................................... 13

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046 (6th Cir. 2011) ................... 4

*Ohio Police & Fire Pension Fund v. Std. & Poor's Fin. Servs. LLC*, 700 F.3d 829 (6th Cir. 2012) ................................................................................................................................... 4

*Parris v. Airco, Inc.*, No. 2002-5955-CA (Fla. Cir. Ct. Apr. 10, 2006) ....................................... 18

*Parrish v. Wilson*, 1998 U.S. Dist. LEXIS 23513 (W.D. Ky. April 16, 1998) ............................. 29

*Patterson v. Novartis Pharm. Corp.*, 451 Fed. Appx. 495 (6th Cir. 2011) ................................... 8

*Payton v. Abbott Lab.*, 512 F. Supp. 1031 (D. Mass. 1981) ....................................................... 26

*Philadelphia Indem. Ins. Co. v. Morris*, 990 S.W.2d 621 (Ky. 1999) ......................................... 12

*Prakash v. Altadis U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 46337 (N.D. Ohio Mar. 30, 2012) ....... 27

*Ranier v. Union Carbide Corp.*, 402 F.3d 608 (6th Cir. 2005) ............................................. 12, 13

*Republic Bank & Trust Co. v. Bear*, 707 F. Supp. 2d 702 (W.D. Ky. 2010), *aff'd*, 683 F.3d 239 (6th Cir. 2012) ............................................................................................................. 4

*Resthaven Mem. Cemetery, Inc. v. Volk*, 150 S.W.2d 908 (Ky. Ct. App. 1941). ........................ 24

*Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295 (Ky. Ct. App. 1993)................................ 15

*Roney v. Gencorp*, 2009 U.S. Dist. LEXIS 85816 (S.D. W. Va. Sept. 18, 2009) ........................ 18

*Sanzone v. Allied Signal, Inc*., No. 00C-07-9068-FSS (Del. Sup. Ct. Jan. 28, 2004 )................. 18

*Senart v. Mobay Chem. Corp*., 597 F. Supp. 502 (D. Minn. 1984)................................................ 27

*Shaw v. Brown & Williamson Tobacco Corp*., 973 F. Supp. 539 (D. Md. 1997)......................... 23

*Sigler v. Ralph*, 417 S.W.2d 239 (Ky. 1967) ............................................................................... 25

*Sonnenreich v. Philip Morris Inc.*, 929 F. Supp. 416 (S.D. Fla. 1996) ................................. 17, 26

*Steele v. Commonwealth*, 26 S.W.2d 747 (Ky. 1929).................................................................. 20

*Stevens v. Saelinger*, 2011 U.S. Dist. LEXIS 10248 (E.D. Ky. Feb. 2, 2011) ........................... 28

*Szabo v. United Parcel Service, Inc.*, 2004 U.S. Dist. LEXIS 10600 (W.D. Ky. May 24, 2004) ......................................................................................................................................... 29

*Taylor v. Airco, Inc*., 503 F. Supp. 2d 432 (D. Mass. 2007), *aff'd*, 576 F.3d 16 (1st cir. 2009) ............................................................................................................................................ 18

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008)............................................................................................................................. 27

*UMW v. Pennington*, 381 U.S. 657 (1965) .................................................................................. 26

*United Parcel Service Co. v. Rickert¸* 996 S.W.2d 464 (Ky. 1999) .............................................. 21

*Vitale v. Henchey*, 24 S.W.3d 651 (Ky. 2000)............................................................................. 25

*Walker v. Lifeskills Inc*., 1995 U.S. App. LEXIS 24629 (6th Cir. Aug. 18, 1995)...................... 29

## INTRODUCTION

In this wrongful death action, plaintiff asserts a smorgasbord of claims for products liability (Counts 1-3), "intentional tort" (Count 4), "outrage" (Count 5), civil conspiracy (Count 6), and punitive damages (Count 7) against decedent's former employer and a laundry list of 26 other defendants that includes various manufacturers, suppliers and trade associations purportedly involved with the U.S. plastics industry over the past half-century. Plaintiff's claims are premised on alleged occupational exposure to vinyl chloride monomer ("VC"). In a similar case making nearly identical allegations, a chamber of this Court dismissed several of the claims plaintiff asserts here. *Hogan v. Goodrich Corp.*, 2006 U.S. Dist. LEXIS 2004 (W.D. Ky. Jan. 17, 2006) (Coffman, J.).[1]

Plaintiff Pamela M. Eastridge, as executrix of the estate of her father, Joseph E. Morris, Jr., alleges that decedent developed angiosarcoma of the liver and died as a result of his occupational exposure to "VC and VC-containing products" and "PVC and PVC-containing products." (Complaint, Dkt. # 1-1 [hereafter "Compl."], at ¶¶ 62, 64, 104.) Decedent is claimed to have been exposed from "approximately 1964" to "the 1980s," while he was employed by defendant Goodrich Corporation ("Goodrich") at its Louisville, Kentucky facility. (Compl. at ¶¶ 62-63.)

Plaintiff asserts her claims against various categories of defendants:

- decedent's former employer, Goodrich (see Compl. at ¶¶ 65-81;

- all defendants, including Goodrich, for "manufacturing, refining, producing, selling, distributing, marketing and/or otherwise placing PVC and PVC-containing

---

[1]   In *Hogan*, as will be discussed below, Judge Coffman dismissed plaintiff's fraud and conspiracy claims. Counts 4-6 of the present Complaint must be dismissed for the same reasons. The product liability claims here must also be dismissed for the reasons discussed below, and pursuant to the Supreme Court's decisions in *Twombly* and *Iqbal*, which were issued after the *Hogan* opinion.

products into the stream of commerce."  Plaintiff alleges these were "known car-

cinogens" that are "processed" from VC (*id*. at ¶¶ 6-59, 67);

- the so-called "Industry" – consisting of *all* named defendants, including two trade

associations – which plaintiff alleges all conspired to "conceal and misrepresent

the true nature and extent of health hazards caused by vinyl chloride exposure."

(*Id*. at ¶¶ 82-98.)

Despite its length, plaintiff's Complaint is deficient on its face and must be dismissed un-

der Rule 12(b)(6).

- Counts 1-3 assert flawed product liability claims.  The claims here against

Goodrich fail because the Kentucky Workers' Compensation Act provides the

sole remedy against an employer.  The claims against *all* of the defendants fail (1)

because they are based on a flawed theory of "enterprise" or "market" liability

that is not recognized under Kentucky law; and (2) because plaintiff has failed to

plead sufficient factual matter to state a claim for relief that is plausible on its

face, as required by the United States Supreme Court's decisions in *Iqbal* and

*Twombly*, and by their progeny.

- Count 4 attempts to assert an employer intentional tort against Goodrich, but fails

because plaintiff has failed to plead (and could never prove) that Goodrich had the

requisite specific, deliberate intent to injure or kill decedent, or that any employee

or agent of Goodrich engaged in physical aggression that led to decedent's injury.

As to the other Movants, merely stating that their conduct is allegedly "intention-

al" fails to provide any plausible basis for liability and is therefore not sufficient

to state a claim under *Iqbal* and *Twombly*.

- Count 5 (for "outrage") fails as a matter of law because plaintiff did not and cannot allege the necessary elements of a claim for outrageous conduct under Kentucky law.

- Count 6 alleges a wide-ranging conspiracy among all the defendants that also fails to state a viable claim.  First, the conspiracy claim fails for lack of any valid underlying intentional tort, just as the Court held in *Hogan*.  The only intentional torts alluded to – fraud and battery – each fail, thereby defeating the attempted conspiracy claim.  Second, by failing to identify particular defendants and their specific roles in the alleged conspiracy, plaintiff's pleading is impermissibly generic.  Third, plaintiff has failed to plead the conspiracy with the specificity required under Rule 9(b) of the Federal Rules of Civil Procedure.  Last, this claim is time-barred by Kentucky's governing one-year statute of limitations.

- Count 7, the "claim" for punitive damages, fails because punitive damages do not constitute an independent claim for relief under Kentucky law.

In sum, the Complaint fails to state *any* claim against Movants on which relief can be granted.  Accordingly, plaintiff's claims must all be dismissed with prejudice.

## LAW AND ARGUMENT

To survive a motion to dismiss, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level...."  *Id*.  To satisfy this test, "'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).[2]

In line with *Twombly* and *Iqbal*, in the Sixth Circuit, a district court "'may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action.'" *Ohio Police & Fire Pension Fund v. Std. & Poor's Fin. Servs. LLC*, 700 F.3d 829, 830 (6th Cir. 2012) (quoting *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011)).  "Rather, the complaint has to 'plead[] factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged.'" *Id*. (quoting *Iqbal*, 556 U.S. at 678).  If a plaintiff does "'not nudge[] the[] claims across the line from conceivable to plausible, [the] complaint must be dismissed.'" *Id*. (quoting *Twombly*, 550 U.S. at 570); *see also Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (in order to survive a motion to dismiss, a plaintiff must do more than plead facts "merely consistent with a defendant's liability."); *Kerman v. Chenery Assocs., Inc.*, 2011 U.S. Dist. LEXIS 30164, *5 (W.D. Ky. Mar. 22, 2011) (Simpson, III, J.) (Supreme Court's standard for dismissal now "requires a more discerning eye in evaluating motions to dismiss").

Significantly, as this Court has recognized, in deciding a motion to dismiss for failure to state a claim, the court "need not accept the truth of legal conclusions or draw unwarranted factual inferences." *Republic Bank & Trust Co. v. Bear*, 707 F. Supp. 2d 702, 707 (W.D. Ky. 2010) (citing *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) and *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)), aff'd, 683 F.3d 239 (6th Cir. 2012).

---

[2]     This standard applies with equal force to complaints that have been removed from state court, as this one has.  *See* Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."); *Crutcher v. Gen. Elec. Co.*, 2011 U.S. Dist. LEXIS 42537, *16 (W.D. Ky. Apr. 19, 2011) (applying the *Twombly/Iqbal* standard to removed complaint).

Here, the Complaint sets forth 38 pages of sweeping allegations, but the acts alleged, no matter how cast, do not establish any entitlement to the relief sought.  The Court should therefore dismiss the Complaint in its entirety.

## I.      PLAINTIFF'S PRODUCT LIABILITY CLAIMS FAIL.

In Counts 1-3, plaintiff asserts product liability claims sounding in negligence and strict liability based on the alleged failure to warn, and strict liability for an alleged "design defect." (Compl. at ¶¶ 99-121.)  Plaintiff's product claims, asserted indiscriminately against all "Defendants" (*id*.) fail for at least three reasons.

First, the product liability claims fail as to Goodrich because, as decedent's employer, Goodrich cannot be liable as a manufacturer/seller of the product.  The Kentucky Workers' Compensation Act ("KWCA") bars the dual-capacity theory implicit in this claim.  Second, plaintiff fails to plead – and cannot prove – that any particular defendant's product caused the alleged injuries.  As Kentucky does not recognize any version of "enterprise liability" or "market share liability," the claim fails for lack of this product identification.  Third, plaintiff's claims premised on strict liability fail because Kentucky's products liability statute codifies Kentucky common law, and applies to all damage claims arising from use of products, regardless of the legal theory advanced.  Thus, as any common-law claim fails, so does any statutory claim.

### A.      Plaintiff's Product Liability Claims Against Goodrich Are Barred by Statute.

Plaintiff's product liability claims asserted against Goodrich are barred by the exclusivity provisions of the KWCA.[3]  As noted in § II, below, the KWCA provides the exclusive remedy for an employee in an action against an employer.  K.R.S. § 342.690.

---

[3]      Even absent the statutory bar, the claims against Goodrich would fail for the same reasons they fail against all other defendants.

Here, Goodrich is sued in two capacities: as decedent's employer and as an alleged manufacturer/supplier of "PVC and PVC-containing products." (*Compare* Complaint ¶ 6 *with* Complaint ¶¶ 70-73.) While in some jurisdictions, this alleged "dual capacity" might constitute an exception to the exclusivity of the workers' compensation remedy, Kentucky does not recognize the dual-capacity doctrine. For instance, in *Borman v. Interlake, Inc.*, 623 S.W.2d 912 (Ky. Ct. App. 1981), a defendant employer allegedly manufactured the steel coil that resulted in decedent's death. The court enforced the exclusivity provision of K.R.S. § 342.690, recognizing that the KWCA prohibits application of any dual-capacity doctrine, and barring plaintiff's product liability claims against the former employer in its capacity as the manufacturer. *Id*. at 913. *See also Helton v. Tri-County Cycles Barbourville, LLC*, 2010 Ky. App. LEXIS 47, *8 n.3 (Ky. Ct. App. Feb. 19, 2010) (dual capacity doctrine barred product liability claim against employer of injured employee).

Accordingly, plaintiff's sole remedy against Goodrich is in its capacity as decedent's employer, and plaintiff's remedy against Goodrich as an employer is exclusively provided under the KWCA. Thus, Counts 1-3, purporting to assert product liability tort claims against Goodrich in its capacity as an alleged manufacturer/supplier defendant, must be dismissed.

**B.    Plaintiff Fails to Allege Which Defendant and Which Product Allegedly Injured Decedent.**

Plaintiff's "product liability" claims, as asserted indiscriminately against all "Defendants," likewise fail, whether premised on negligence (Count 1), strict liability for failure to warn (Count 2) or strict liability for defective design (Count 3).[4]

_____

[4]     Plaintiff acknowledges that American Chemistry Council ("ACC") is a trade association that promotes the plastics industry and lobbies on its behalf. (Compl. at ¶¶ 44-45.) ACC is not a proper defendant as to Counts 1-3 of the Complaint. In these product liability counts, plaintiff incorrectly alleges that all "Defendants," including ACC, were engaged in the business of "de-

As the Supreme Court established, a pleading "requires more than labels and conclusions, and a formulaic recitation of the elements," in order to withstand dismissal. *Twombly*, 550 U.S. at 555. Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level...." *Id*. Put another way, "'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). There must be factual content sufficient to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As the Sixth Circuit has held, these standards require that in order to survive a motion to dismiss, a plaintiff must do more than plead facts "merely consistent with a defendant's liability." *Albrecht*, 617 F.3d at 893.

Here, ignoring the pleading requirements imposed by *Iqbal* and *Twombly*, plaintiff fails to state any viable products liability claim because the Complaint lacks sufficient facts specific to any Movant, but rather lumps together allegations against unidentified, generic "Defendants." Indeed, plaintiffs' Complaint presents a classic example of inappropriate "party lumping," in which a plaintiff alleges exposure to multiple products (such as "VC" and "VC-containing prod-

---

signing, developing, testing, manufacturing, marketing, distributing and selling VC and VC-containing products." (*Id*. at ¶¶ 104, 117.) This allegation contradicts plaintiff's allegation that ACC at relevant times was a "trade organization" "engaged in promoting the interests" of the plastics industry. Axiomatically, in a products liability claim, whether premised on negligence or strict liability, liability is limited to entities in the product supply chain. *See, e.g., C&S Fuel, Inc. v. Clark Equip. Co.*, 552 F. Supp. 340 (E.D. Ky. 1982) (to establish liability on a theory of negligent failure to warn, plaintiff must prove that supplier knew or should have known of the dangerous condition); *Dealers Transport Co. v. Battery Distrib. Co*., 402 S.W.2d 441 (Ky. 1965) (in strict liability claim, plaintiff must prove that product was sold by the defendant, who is engaged in the business of selling such a product). Plaintiff acknowledges that ACC is a trade association and that it did not and does not design, develop, test, manufacture, market, distribute or sell vinyl chloride or vinyl chloride-containing products. Therefore, Counts 1-3 fail state any valid claim against ACC and must be dismissed.

ucts" and "PVC" and "PVC-containing products"), over a long period of time, allegedly produced or sold by multiple defendants.

The lack of differentiation is particularly significant because, under Kentucky law, there is no "enterprise liability," "industry liability" or "market" liability. Plaintiff generically alleges that "Industry" engaged in misconduct dating back to 1953 with respect to the testing, use, marketing and manufacture of VC. (Compl. at ¶¶ 82-98.) By using the designation "Industry," plaintiff appears to be invoking "the theory of enterprise liability [, which] seeks to place the costs arising from the risks associated with a particular activity or enterprise on the activity or enterprise which created them." *Farmer v. City of Newport*, 748 S.W.2d 162, 165 (Ky. Ct. App. 1988).

The concept of industry-wide liability has never been adopted by Kentucky. *See Dawson v. Bristol Labs.*, 658 F. Supp. 1036, 1040 (W.D. Ky. 1987) (granting motion to dismiss products liability claims arising from ingestion of tetracycline where plaintiff could not identify manufacturer of drug she ingested, yet attempted to hold several industry participants jointly liable because the entire drug industry supposedly controlled the risk; noting that no Kentucky authority has adopted theory).

The Eastern District of Kentucky recently reaffirmed the product-identification principle, dismissing a claim where plaintiffs failed to plead that they were exposed to a particular manufacturer's product. *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 865 F. Supp. 2d 904, 908 (E.D. Ky. 2012) ("Not one of the plaintiffs in these cases has properly identified Xanodyne as the entity that marketed, sold or manufactured the product he or she ingested."); *see also Patterson v. Novartis Pharm. Corp.*, 451 Fed. Appx. 495, 497 (6th Cir. 2011) ("The district court properly granted Novartis's motion to dismiss because Patterson's complaint does not sufficient-

-8-

ly allege that she received infusions of Aredia manufactured by Novartis."). Thus, under Kentucky law, each party's potential liability depends on its own actual product, its own knowledge and a plaintiff's actual exposure to its product.

Plaintiff alleges that VC and PVC (and unspecified products containing VC and PVC) were supplied to Goodrich's Louisville facility over a vaguely-described span of more than a quarter century. (See Compl. at ¶¶ 62-64, 104.) There is no attempt to specify which defendant supplied which product, and no attempt to specify the time period during which each defendant allegedly supplied the claimed substances and products.[5] Plaintiff identifies particular defendants by name only when broadly alleging, in identical rote paragraphs, that each such defendant "engaged in the manufacturing, refining, producing, selling, distributing, marketing and/or otherwise placing into the stream of commerce, PVC and PVC-containing products" during some unidentified time. (Compl. at ¶¶ 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, 47, 49, 51, 55, 57, 59). But there is no such precision when it comes to alleging whether each such defendant ever supplied the Louisville facility, that decedent was ever exposed to any particular defendant's product or that a particular defendant's product caused decedent's alleged injury. Indeed, with regard to any allegations concerning decedent's exposure and causation claims, generic use of "Defendants" is the rule in the Complaint, leaving defendants such as these Movants to guess whether that means two, three, four or 25 defendants are claimed to have caused the claimed injury.

---

[5]     This lack of detail also makes it impossible for any particular defendant to address whether there are sufficient allegations as to any alleged level of "knowledge" it had at specific points in time when it may or may not have supplied anything that the plaintiff may claim her decedent was exposed to.

A similar failure to identify specific manufacturers led another court to dismiss a vinyl chloride case in *Bellith v. Allied Signal*, No. BC 285147 (Cal. Super. Ct. Apr. 9, 2003) (att. as Ex. *). In *Bellith*, as here, plaintiff alleged that decedent was injured by exposure to "vinyl chloride monomer" and "other toxic chemicals." *Id.* at 2. As here, the plaintiff in *Bellith* failed to allege any nexus between any of the multiple "supplier" defendants and the product to which decedent was allegedly exposed. *Id.* Also as here, the *Bellith* complaint failed to "identify products or differentiate between products, manufacturers, time periods, or circumstances under which plaintiff . . . was allegedly exposed to any particular product." *Id.*

As in *Bellith*, plaintiff fails to connect any product to which decedent was allegedly exposed to any specific defendant, and includes references to unspecified "PVC-containing products" and "VC-containing products." (Compl. at ¶¶ 63, 106.) Indeed, plaintiff's claims are apparently aimed generically at all manufacturers, producers, suppliers and sellers of unspecified products to decedent's workplace regardless of whether they supplied any products to which the decedent actually was exposed. Further, plaintiff fails to identify whose product(s) decedent allegedly was exposed to, in what quantities or over what period or length of time the exposure occurred, or that such exposure to that particular defendant's product proximately caused the claimed injury.

In short, the broad allegations in the Complaint, including the veiled attempt to assert some form of "enterprise liability," do not satisfy the pleading requirements established and interpreted by the Supreme Court or Kentucky law. All of plaintiff's product liability claims, therefore, fail under Rule 12(b)(6).[6]

---

[6]     To the extent that plaintiff may argue that the ruling in *Hogan*, *supra* – which upheld the sufficiency of the products liability claim – undermines Movants' motion to dismiss those claims here, plaintiff is wrong as a matter of law. The ruling on the product liability claims in *Hogan*

### C.     Plaintiff's Claims for "Strict Liability" Fail.

To the extent that plaintiff is trying to assert a claim in Counts 2-3 under Kentucky's Products Liability Act ("PLA"), K.R.S. § 411.300, *et seq.*, this attempt is also unavailing; these claims fail under Kentucky's products statute for the same reasons they fail under Kentucky common law, including the failure to allege that decedent was exposed to the product(s) of particular defendant(s), or that a particular defendant's product caused the claimed injury.  *See Monsanto Co. v. Reed*, 950 S.W.2d 811, 814-15 (Ky. 1997) (PLA codifies Kentucky common law, and applies to all damage claims arising from use of products, regardless of legal theory advanced).  Accordingly, any claim based on the PLA is defeated.

For all these reasons, the Court should dismiss Counts 1-3 of the Complaint.

## II.    PLAINTIFF FAILS TO STATE A VALID CLAIM FOR EMPLOYER INTENTIONAL TORT AGAINST GOODRICH.

Although inartfully pled, plaintiff appears in Count 4 to assert a claim for employer intentional tort against decedent's former employer, Goodrich.  Plaintiff alleges that Goodrich "fraudulently withheld and concealed" knowledge about the "true facts regarding the carcinogenic chemicals" that workers allegedly were exposed to at the Louisville facility, with the result that decedent was "intentionally exposed to dangerous amounts of VC without his informed consent," and that Goodrich's alleged conduct "made it ***substantially certain*** that [decedent] would be injured through VC exposure…."  (Compl. at ¶ 70, emphasis added.)  Such a claim is insuffi-

---

was based on the now-defunct standard under which a Rule 12(b)(6) movant was required only to "establish beyond doubt that the plaintiff can prove no set of facts in support of her claims that would entitle her to relief."  *Hogan*, 2006 WL 149011, at *1.  This "no-set-of-facts" pleading standard was officially "retire[d]" by the U.S. Supreme Court five years ago in *Twombly*.  *Twombly*, 550 U.S. at 563; *see also Iqbal*, 556 U.S. at 670 (referencing the "retirement" of that standard).  Accordingly, merely pleading the elements of a claim is no longer permitted under *Iqbal* and *Twombly*, both decided after *Hogan*.

cient as a matter of law to overcome Kentucky's workers' compensation bar under applicable Kentucky and Sixth Circuit authority.

The purpose of the KWCA is "to compensate workers who are injured in the course of their employment . . . without regard to fault." *Adkins v. R&S Body Co.*, 58 S.W.3d 428, 430 (Ky. 2001).[7]  In exchange for the employer's agreement to participate in the no-fault system, "each employee subject to the Act relinquishes all common law claims against the employer arising out of a work-related injury." *Philadelphia Indem. Ins. Co. v. Morris*, 990 S.W.2d 621, 624 (Ky. 1999).  Under the KWCA, "the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee [or] his legal representative…."  K.R.S. § 342.690.

There are only two narrow exceptions to the exclusivity of the workers' compensation remedy under Kentucky law: deliberate intent to injure and willful physical aggression.  The Complaint does not (and could not) plead facts within either exception.

The only marginally-relevant exception to the workers' compensation bar here is "[i]f injury or death results to an employee through the deliberate intention of his or her employer to produce such injury or death."  K.R.S. § 342.610(4).  "Kentucky courts have interpreted this to mean that 'the employer must have *determined to injure an employee* and used some means appropriate to that end, and there must be a specific intent.'"  *Meade v. Arnold*, 643 F. Supp. 2d 913, 918 (E.D. Ky. 2009) (emphasis added) (quoting *Ranier v. Union Carbide Corp.*, 402 F.3d

---

[7]      The KWCA defines "injury" as "any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings … 'Injury' when used generally, unless the context indicates otherwise, shall include an occupational disease."  K.R.S. § 342.0011(1).  "Occupational disease" means "a disease arising out of and in the course of the employment."  K.R.S. § 342.0011(2).

608, 615 (6th Cir. 2005) (interpreting KWCA)); *see also Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 536 (6th Cir 1999) (applying Kentucky law and rejecting intentional tort claim because "there is no indication or reasonable inference that the company intended to injure or kill [decedent]").

Thus, "deliberate intention" under Kentucky law means that the employer specifically intended to injure or kill the employee – anything less is insufficient to maintain an action for employer intentional tort. *See, e.g.*, *Moore v. Envtl. Constr. Corp.*, 147  S.W.3d 13, 16-17 (Ky. 2004) (defendant "who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, *but it is not an intentional wrong*.") (emphasis added, internal quotation omitted).

Likewise, a *substantial certainty* of injury or harm (the only level of culpability alleged in ¶ 70 of the Complaint here) is insufficient to meet Kentucky's narrow reading of "deliberate intention" under the KWCA.  In *Ranier*, *supra*, former employees asserted claims against their employer based on their occupational exposure over many years to radioactive substances. Faced with Kentucky's stringent standards, plaintiffs argued that "deliberate intention" "must include conduct undertaken with the knowledge that it will produce a certain result, *or is substantially certain to do so*."  402 F.3d at 616 (emphasis added, internal quotation omitted).  A chamber of this Court rejected that argument, and the Sixth Circuit Court of Appeals affirmed, stating that "[a]s the district court noted in its lengthy and persuasive assessment, 'the definition of 'deliberate intention to produce injury' as used in the [KWCA] is much narrower than 'intent' in general tort law, where the substantial certainty analysis is proper.'"  *Id*.

Here, to the extent that a claim for employer intentional tort can be discerned at all, plaintiff merely alleges exactly what this Court and the Sixth Circuit rejected in *Ranier*:  that Goodrich's alleged conduct resulted in decedent's "being intentionally exposed to dangerous amounts of VC [and] made it *substantially certain* that [decedent] would be injured through VC exposure and he was eventually injured and … died as a result…"  (Comp. at ¶ 70, emphasis added.)[8]

Likewise, plaintiff alleges that the conduct of all defendants, including Goodrich, "constitutes an intentional tort, as there has been a deliberate and intentional use of VC after Defendants knew VC exposure *could* cause injury and death."  (Compl. at ¶ 123, emphasis added.)  Nowhere, however, does plaintiff make the self-evidently absurd allegation that Goodrich intended to harm or kill decedent.  Absent any such (good faith) allegation, the claim is barred, mandating dismissal of any possible claim against Goodrich based on employer intentional tort.[9]

### III.   PLAINTIFF FAILS TO STATE A CLAIM FOR "OUTRAGE."

In Count 5, plaintiff appears to advance a claim for "outrage."  However, plaintiff has not and cannot allege the necessary elements of a claim for outrageous conduct under Kentucky law.  Accordingly, the Court should dismiss Count 5.

---

[8]     Irrespective of the Court's determination on the question of workers' compensation exclusivity, any employer intentional tort claim is also time-barred, as it is based on the alleged "fraudulent concealment" of information.  (Compl. at ¶ 70.)  As discussed below, Kentucky's 10-year statute of repose defeats any such fraud claim, and therefore any employer intentional tort claim.

[9]     The other narrow exception to the exclusivity of the workers' compensation remedy is set out in K.R.S. § 342.690(1), which provides that the employer's exemption from liability except under the KWCA extends to the employer's employees, officers or directors *except* when an employee's injury or death is proximately caused by "willful and unprovoked physical aggression" of such employee, officer or director.  Here, there is no allegation whatsoever that decedent's death was caused by "willful and unprovoked physical aggression" by any employee, officer or director of Goodrich.  Therefore, this exception does not apply.

"The tort of outrage will lie when the defendant's conduct was intended *only* to cause extreme emotional distress."  *Lovins v. Hurt*, 2011 U.S. Dist. LEXIS 132151, *7-8 (E.D. Ky. Nov. 16, 2011) (emphasis added) (citing *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. Ct. App. 1993)).  No case in Kentucky has ever found that a claim for "outrage" could be asserted based on a product liability claim – the cases are all extreme examples of "outrageous" conduct, much like cases in other jurisdictions under the rubric of "intentional infliction of emotional distress."

For instance, in *Rigazio*, *supra*, the court affirmed dismissal of a claim for outrage asserted against a member of the clergy accused of sexually abusing a child, where the conduct was at least partly for the sexual gratification of the defendant and therefore not "intended *only* to cause extreme emotional distress" to the victim.  853 S.W.2d at 299 (emphasis added).  Similarly, in *Lovins*, *supra*, the district court dismissed a state-law claim for outrage arising from a police search of plaintiff's residence.  The court held that "the language of the pleading does not indicate that [defendant's] actions of searching and seizing the plaintiffs' property were intended *solely* to cause emotional distress; rather, each count states that the emotional distress was a 'direct and proximate result of the above-described ... conduct of Defendant.'  The pleading does not show the required level of intent for outrage…." 2011 U.S. Dist. LEXIS at *8.

Further, "when the claim of emotional distress is a supplement to another tort claim, such as false imprisonment, the burden of showing sole intent cannot be met." *Lovins,* 2011 U.S. Dist. LEXIS at *7-8.  *See also Banks v. Fritsch*, 39 S.W.3d 474, 481 (Ky. Ct. App. 2001) (where evidence did not show that teacher's conduct in chaining student to a tree was solely carried out in order to cause student extreme emotional distress, trial court correctly directed verdict in favor of defendant on claim for outrage).

Here, as in *Lovins*, plaintiff alleges only that emotional distress was "the direct and proximate result" of defendants' alleged wrongful conduct. (Compl. at ¶ 127.) But nowhere is it alleged that the *sole* purpose of defendants' conduct was to cause decedent extreme emotional distress. Indeed, the allegations of the Complaint command the opposite. *See e.g.*, Complaint at ¶ 69(j) (Goodrich provided false information to its employees and the public in order to assuage concerns about label wording); *id.* at ¶ 69(*l*) (Goodrich withheld truth about nature and extent of VC exposure because it would be "bad for its business in general…"); *id.* at ¶ 93 ("Industry conducted fraudulent epidemiology studies because it desired to substantiate its position that VC caused angiosarcoma only at very high exposure levels).

Because plaintiff does not and cannot allege that defendants' conduct was carried out *solely* in order to cause decedent severe emotional distress, the Court must dismiss Count 5 as a matter of law.

## IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR CONSPIRACY.

In Count 6, plaintiff attempts to state a claim for conspiracy against all defendants, alleging that all defendants conspired to commit a series of "tortious acts." (Compl. at ¶ 130.) The Court should dismiss Count 6 for four reasons. First, to state a claim for conspiracy, plaintiff must plead a valid underlying intentional tort, and plaintiff cannot satisfy this requirement. Second, plaintiff fails to identify any particular defendant's role in the alleged conspiracy; rather, all are summarily lumped together without differentiation. Third, plaintiff has failed to plead the conspiracy claim with the specificity required by Federal Civil Rule 9(b). Last, any conspiracy claim is time-barred by Kentucky's governing one-year statute of limitations. Any of these four reasons is sufficient to mandate dismissal of plaintiff's attempted conspiracy claim, as many other courts have done in similar cases premised on virtually identical allegations.

### A.   Plaintiff's Conspiracy Claim Fails for Lack of an Underlying Intentional Tort.

In Count 6, plaintiff attempts to conjure up a massive and far-reaching conspiracy among all the defendants.  A chamber of the Court has already considered this claim in a similar case, and ruled that the conspiracy claim failed on the pleadings.

"Accurately speaking, there is no such thing as a civil action for conspiracy" under Kentucky law.  *Davenport's Adm'x. v. Crummies Creek Coal Co.*, 184 S.W.2d 887, 888 (Ky. Ct. App. 1945) (citing 11 Am. Jur. *Conspiracy*, § 45).  "Accordingly, to state a valid claim for civil conspiracy, the plaintiff must sufficiently allege that an underlying wrong existed*."  Hogan v. Goodrich Corp.*, 2006 U.S. Dist. LEXIS 2004, * 20 (W.D. Ky. Jan. 17, 2006 (Coffman, J.) (dismissing conspiracy claim with prejudice in a vinyl chloride case).

Moreover, the "underlying wrong" necessary to sustain a conspiracy claim must be an *intentional* tort.  A "conspiracy to be negligent" is an oxymoron, as recognized in *American Jurisprudence*:  "[C]ivil conspiracy is an intentional tort requiring a specific intent to accomplish the contemplated wrong, and *because negligence is, by definition, not an intentional wrong, the parties cannot engage in civil conspiracy to be negligent*."  16 Am. Jur. 2d *Conspiracy* § 51 (1998) (emphasis added); *see also Gonzalez v. Am. Home Prods. Corp.*, 223 F. Supp. 2d 803, 805 (S.D. Tex. 2002) ("[A] claim of civil conspiracy cannot be based upon negligence."); *Sonnenreich v. Philip Morris Inc.*, 929 F. Supp. 416, 419 (S.D. Fla. 1996) ("Logic and case law dictate that a conspiracy to commit negligence is a *non sequitur*.").

Applying this principle in *Hogan*, a chamber of this Court dismissed the conspiracy claim for lack of any valid underlying tort.  2006 U.S. Dist. LEXIS 2004 at *19-20.  The Court held that (as here) fraud could not constitute the requisite underlying tort because it was time-barred by Kentucky's governing 10-year statute of repose.  *Id*. at *13.  Moreover, the Court held that

"there is no authority that civil conspiracy claims can be based on negligence or strict liability," and therefore plaintiff's product liability claims could not constitute the required underlying tort. *Id*. at *20.  The Court therefore dismissed the conspiracy claim with prejudice.  *Id*. at *21,

Numerous other courts have done the same when faced with conspiracy claims set out in voluminous vinyl chloride "form" complaints.[10]  *See Bogner v. Airco, Inc.*, 2003 U.S. Dist. LEXIS 26890, *31-43 (C.D. Ill. Apr. 3, 2003) (granting defendants' motion to dismiss where plaintiff failed to plead fraud with specificity, eliminating underlying tort from conspiracy claim); *Parris v. Airco, Inc.,* No. 2002-5955-CA, slip op. at 3-4 (Fla. Cir. Ct. Apr. 10, 2006) (att. as Ex. 2) ("With the failure of [the fraud claim], no underlying fraud remains to support [the conspiracy claim], so Count IV should also be dismissed."); *Anderson v. Airco, Inc*., 2004 Del. Super. LEXIS 393, *18 (Del. Super. Nov. 30, 2004) ("[N]o authority exists to support a civil conspiracy claim proceeding on the shoulders of a negligence claim."); *Bellith,* slip op. at 3-4 (dismissing plaintiff's complaint for lack of specificity necessary to sustain claims for fraud, civil conspiracy and product liability) (att. as Ex. 1); *Criss v. Air Prods. & Chems., Inc*., No. CV-04-540828, slip op. at ¶ 2 (Cuyahoga Cty. (Ohio) C.P. April 22, 2005) (granting motion to dismiss conspiracy

---

[10]     While not in the context of Rule 12(b)(6), the courts in several other vinyl chloride cases, granted summary judgment on plaintiffs' claims for conspiracy because the underlying fraud claims failed as a matter of law.  *See Taylor v. Airco, Inc*., 503 F. Supp. 2d 432, 448 (D. Mass. 2007) (in order to state claim for  civil conspiracy, plaintiff "must prove underlying intended tort;" granting summary judgment where fraud claim lacked merit), *aff'd*, 576 F.3d 16, 34-35 (1st Cir. 2009); *Roney v. Gencorp*, 2009 U.S. Dist. LEXIS 85816, *6 (S.D. W. Va. Sept. 18, 2009) (granting summary judgment on conspiracy claim where fraud claim failed for lack of evidence; "intentional failure to warn" cannot support claim for conspiracy); *Lewis v. Airco, Inc*., 2011 N.J. Super. Unpub. LEXIS 1914, *94-97 (N.J. Ct. App. July 15, 2011) (trial court erred in denying motion for summary judgment on conspiracy claim; once fraud claim was dismissed, claim lacked underlying intentional tort, as required); *Sanzone v. Allied Signal, Inc*., No. 00C-07-9068-FSS (Del. Sup. Ct. Jan. 28, 2004 ) (Final Judgment Order att. as Ex. 3) (if not otherwise mooted by plaintiffs' withdrawal of her opposition to defendants' motions for summary judgment, "the Court would rule in defendants' favor" that claims for conspiracy and aiding and abetting fail for lack of an actionable underlying tort).

and fraud claims; "As the underlying tort of fraud fails, plaintiffs' claims for conspiracy to commit fraud fail as a matter of law.") (att. as Ex. 4).[11]

It is clear then, that in order to withstand dismissal, a conspiracy plaintiff must plead a valid underlying intentional tort claim.  Here, plaintiff appears to assert that two intentional torts supply the required support for the conspiracy claim:  fraud (Compl. at ¶ 128) and battery (*id.*). Neither claim is actionable here, however, and therefore neither can supply the requisite tort for purposes of plaintiff's attempted conspiracy claim.

### 1.    There is No Viable Fraud Claim to Stand as the Underlying Intentional Tort.

#### a.    Any claim for fraud is time-barred.

Fraud cannot constitute the underlying tort in this case because any such claim would be barred by Kentucky's 10-year statute of repose.[12]   *Hogan*, 2006 U.S.  Dist. LEXIS 2004 at *12 (citing K.R.S. § 413.120(12)).  Under the relevant statute, any action for fraud "***shall be commenced within ten (10) years*** after the time of the.... perpetration of the fraud."  K.R.S. § 413.130(3) (emphasis added).  Therefore, a fraud claim abates 10 years after "perpetration" of the fraud, no matter when discovered, and *even if never discovered.  See Bowden v. City of Franklin*, 13 Fed. Appx. 266, 275 (6th Cir. 2001) ("Even if Plaintiffs never discovered the fraud, the statute of limitations would have expired" under K.R.S. § 413.130(3) at the latest ten years after the allegedly false statements; affirming grant of summary judgment in favor of defendant

---

[11]    The court's Order in the *Criss* case also dismissed claims for conspiracy to commit fraud in four additional cases that were premised on the same conspiracy allegations.  Those cases are captioned in the Order in *Criss*.

[12]    A federal court sitting in diversity, as here, looks to state law to determine when a claim for relief accrues and when it lapses by operation of a statute of limitation.  *Bowden v. City of Franklin*, 13 Fed. Appx. 266, 275 (6th Cir. 2001) (applying Kentucky law).

by United States District Court for the Western District of Kentucky); *Madison County v. Arnett*, 360 S.W.2d 208, 209 (Ky. 1962) (suit alleging fraud in connection with settlement agreement may be brought five years after discovery of the fraud, "but not exceeding in all ten years after the settlement was confirmed") (quoting *Steele v. Commonwealth*, 26 S.W. 2d 747, 749 (Ky. 1929)).  As the *Hogan* court noted in dismissing the fraud claim, "the ten-year bar for fraud actions applies even if the injured party did not know of the fraud before the time limit expires." 2006 U.S. Dist. LEXIS 2004 at *12.

In *Hogan*, plaintiff alleged that defendants fraudulently concealed facts about the alleged health hazards of VC, and attempted to premise a conspiracy claim on the alleged fraud.  The Court ruled that "since the alleged fraud occurred at the very latest in 1979," when plaintiff's decedent was last exposed at the Louisville plant, it was barred by the ten-year fraud statute of repose.  *Id*. at * 12.

As in *Hogan*, the alleged fraud in this case occurred, at the very latest, in "the 1980s," when plaintiff's decedent was last exposed to "PVC and PVC-containing products at Goodrich Corporation's Louisville facility."  (Compl. at ¶ 63.)  Accordingly, plaintiff's conspiracy claim cannot rest on fraud because it was not raised within ten years of the alleged fraud.  Any alleged concealment, (*id*. at ¶¶ 70, 133), is irrelevant.  *Johnson v. Fetter*, 7 S.W.2d 241, 245 (Ky. 1928) (predecessor to K.R.S. § 413.130(3)'s 10-year statute of repose for fraud operated, regardless of whether plaintiff's failure to assert claim was procured by fraud).

Under K.R.S. § 413.130(3), no fraud claim can be actionable because it would have long expired under the 10-year bar.  Therefore, just as in *Hogan*, fraud cannot serve as the requisite intentional tort for purposes of plaintiff's claim for conspiracy.

-20-

**b.      Any claim for fraud fails for lack of particularity under Rule (9)(b).**

A claim of fraud cannot support plaintiff's conspiracy claim for the additional reason that she has failed to plead it with the particularity required under Rule 9(b), Federal Rules of Civil Procedure.

In order to state an actionable claim for fraud under Kentucky law, plaintiff must plead and prove – as to each defendant:  (1) a material representation; (2) which is false; (3) known to be false; or (4) recklessly made with inducement to be acted upon; (5) acted on in reliance there-upon; and (6) causing injury.  *United Parcel Service Co. v. Rickert¸* 996 S.W.2d 464, 468 (Ky. 1999).  Under Rule 9(b), plaintiff must plead these elements with "particularity."  At a minimum, the heightened pleading requirement of Rule 9(b) mandates that plaintiff state with particularity: the time, place, and content of the misrepresentation on which plaintiff relied; the fraudulent scheme; the intent of the defendants; and the resulting injury.  *Anderson v. Pine South Capital, LLC*, 177 F. Supp. 2d 591, 596 (W.D. Ky. 2001) (dismissing fraud claims that failed to specify which defendant made what misrepresentation and failed to state manner and place of alleged misrepresentations).  Significantly, when the complaint involves multiple defendants (as it does here), "each defendant's role must be particularized with respect to their alleged involvement in the fraud."  *Id*. at 596-97 (citations omitted).

Although the Complaint here goes on for 38 pages, plaintiff nonetheless fails to allege with particularity what facts any specific Movant supposedly knew (but concealed), or when and how any specific Movant purportedly knew or became aware of such facts – as opposed to broad-brush allegations about the "Industry."  Moreover, a valid claim for fraud also requires that the plaintiff establish actual knowledge of and reliance on the fraudulent conduct.  *Rickert*, 996 S.W.2d at 468.  Plaintiff does not even attempt to allege such reliance here.  Plaintiff must

plead specific facts as to each Movant sufficient for the Court to ascertain whether there is a basis to proceed on a fraud claim against it.  Plaintiff has failed to do so because there are no facts to support such claims.

Here, as in *Anderson*, *supra*, where the court dismissed fraud claims that failed to specify the "who, how and where" of the alleged misrepresentations, plaintiff's general and conclusory allegations fail to meet Rule 9(b)'s heightened pleading requirements.  Plaintiff's improper lumping together of all alleged manufacturers/suppliers, trade associations and decedent's former employer into the catch-all designation "Industry" reflects the complete failure and presumed inability to specify the allegedly fraudulent conduct and which Movant (or any other defendant) allegedly carried it out.  Thus, plaintiff alleges that:  "Industry" approved a fraudulent safety-data sheet for VC (Compl. at ¶ 83); "Industry" "squelched" publicity regarding occupational diseases related to VC exposure (*id*. at ¶ 87); "Industry" deleted recommendations for a lower VC exposure standard from a published scientific report (*id*.); and "Industry" conducted fraudulent studies "in an attempt not to find cancer related to vinyl chloride exposure" (*id*. at ¶ 93).  But these allegations (and other similar ones) do not come close to supplying the information necessary to meet the particularity requirement of Rule 9(b).

For these additional reasons, any fraud claim fails regardless of the time bar raised by the statute of repose, and therefore fraud cannot constitute the intentional tort required in order for plaintiff's attempted conspiracy claim to withstand dismissal.

### 2.    Battery Cannot be the Underlying Tort to Support the Alleged Conspiracy.

Plaintiff alleges that by exposing decedent to VC without consent, Movants and all other defendants carried out "an intentional infliction of harmful and/or offensive contact to the person" of decedent, and "therefore conspired to commit … the intentional tort of battery."  (Compl.

at ¶ 128.)   First, plaintiff's rote allegation that Movants (and all other defendants) "intended" to commit battery against decedent does not state a claim that is plausible on its face under *Iqbal* and *Twombly*, and the Court is not required to accept any such allegation for purposes of this Motion to Dismiss.   Second, battery cannot be the underlying claim here because any such claim would be time-barred.   Third, even if not time-barred, contact with a chemical substance sold to a third party does not constitute a battery under Kentucky law.

### a.      Plaintiff's rote allegation of "intent" fails.

Under Kentucky law, "[i]ntent is an essential element" of a claim for battery.   *Barnette v. Grizzly Processing, LLC*, 809 F. Supp. 2d 636, 648 (E.D. Ky. 2011).   Indeed, intent is "a critical link in establishing battery."   *Id.* (citing *Vitale*, 24 S.W.3d at 657).   Moreover, the legal question raised by a claim of battery is not whether the defendant intended to carry out some action.   The question is "Did the Defendants *intend to touch* the Plaintiffs?"   *Id.* (emphasis added).   When the class "of potential victims becomes vague [] and when . . . the time frame involving the actor's conduct expands" the answer to that question is "No."   *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 548 (D. Md. 1997) (dismissing battery claim where company "did not know with a substantial degree of certainty that second-hand smoke would touch any particular non-smoker") (emphasis added).

At best, plaintiff here pays lip service to the crucial element of intent by reciting that "[decedent] and other VC workers were intentionally overexposed to VC" and that "such uncon-sented exposure … constituted an intentional infliction of harmful and/or offensive contact to the person of [decedent] without his consent by the Defendants, along with and through their trade associations."  (Compl. at ¶ 128.)  But there is no factual allegation or predicate, as required by *Iqbal* and *Twombly*, that Movants (or any other defendant) actually intended to "touch" decedent.

Even if the Complaint could be read to allege such an intentional touching of decedent, any such allegation would be outside the bounds of reason.  The Movants here are five large corporations and a trade association.  To say that they each knew of decedent and intended to carry out an un-consented-to touching of decedent's person is more than implausible – it simply defies belief.  As the Supreme Court held in *Twombly*, in order to withstand dismissal, a complaint must "state a claim to relief that is plausible on its face."  550 U.S. at 570.  No claim for battery could be plausible here given the "essential element" of intent.  *Barnette*, 809 F. Supp. 2d at 648.  Even in the context of a Motion to Dismiss under Rule 12(b)(6), the Court is not required to accept an unbelievable contention as true.  In *Levinson*, this Court held that in deciding a motion to dis-miss, it need not accept "unwarranted factual inferences" as true.  289 F. Supp. 2d at 85.  Even less so should it accept unbelievable "facts" as true.  For this reason, battery cannot constitute the underlying tort for purposes of plaintiff's attempted claim for conspiracy.

**b.    Plaintiff's claim for battery is time-barred.**

The one-year statute of limitations provided by K.R.S. § 413.140(1)(a) applies to the tort of battery.  *Avery v. G & S Vending, Inc*., 2005 U.S. Dist. LEXIS 20483, *15-16 (E.D. Ky. Sept. 19, 2005); *Resthaven Mem. Cemetery, Inc. v. Volk*, 150 S.W.2d 908, 911 (Ky. Ct. App. 1941).  The cause of action accrues, and the limitations period begins to run, when the battery occurs.  *See Dunn v. Felty*, 2005 Ky. App. Unpub. LEXIS 80 (Ky. Ct. App. April 1, 2005) (claim for false arrest and battery accrued at the time of the battery, and suit was therefore time-barred when filed more than one year later), *aff'd*, 226 S.W.3d 68, 74 (Ky. 2007).  Here, plaintiff alleg-es that his last occupational exposure at the Louisville plant was in "the 1980's."  (Compl. at ¶ 63.)  Even assuming the alleged exposure ceased on December 31, 1989, any claim for battery would have expired by January 1, 1991, more than *22 years ago*.  Thus, plaintiff's battery allega-

tions do not state a cognizable claim, and battery cannot constitute the required valid underlying intentional tort for purposes of plaintiff's claim for civil conspiracy.

> **c.**     **The tort of battery does not encompass chemical "touching"** ***via* a manufacturing process.**

No Kentucky state court has approved or even addressed the extreme claim asserted here – that alleged dermal or respiratory occupational contact with a chemical substance supplied to or used by an employer in the production process can constitute a battery.  Kentucky defines civil battery as "any unlawful touching of the person of another, either by the aggressor himself, of by any substance set in motion by him." *Sigler v. Ralph*, 417 S.W.2d 239, 241 (Ky. 1967) (quoting *Caldwell's Kentucky Judicial Dictionary* (1916).  Kentucky state cases regarding battery deal with *physical* touching, and no such case has ever deemed chemical exposure from material sold to another party (here, the employer, Goodrich) and used in production to constitute a civil battery.  *See, e.g., Sigler, supra* (considering battery consisting of shooting plaintiff with blank bullets); *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000) (considering unconsented-to medical procedure); *Dunn*, 226 S.W.3d at 69 (considering battery and excessive force used in arrest, consisting of choking plaintiff and striking him with a flashlight), *aff'g* 2005 Ky. App. Unpub. LEXIS 80 (Ky. Ct. App. April 1, 2005).  In the absence of any precedent, the Court should not extend the tort of battery so radically as to encompass chemical "touching" via a manufacturing process.[13]

---

[13]     Federal courts sitting in diversity should be reticent to expand state law without clear guidance from the state's highest court or its legislature.  *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) ("when given a choice between an interpretation of state law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path") (citation and brackets omitted); *Jackson v. Murray State Univ.*, 2012 U.S. Dist. LEXIS 120480, *17-18 (W.D. Ky. Aug. 24, 2012) (refusing to expand state law "without better guidance from the state's own courts"); *In re Darvocet, Darvon & Propoxyphene*

### 3.    No Other Claim Can be the Underlying Intentional Tort.

No other claim pled here could provide the requisite underlying intentional tort for plaintiff's conspiracy claims.  Whether the product liability claims advanced by plaintiff in Counts 1-3 sound in negligence or strict liability, those claims cannot support plaintiff's conspiracy claims.  As Judge Coffman held in *Hogan*, "there is no authority that civil conspiracy claims can be based on negligence or strict liability."  2006 U.S. Dist. LEXIS 2004, *20.  *See also Lewis v. Airco, Inc*., 2011 N.J. Super. Unpub. LEXIS 1914, *97 (N.J. Ct. App. July 15, 2011) ("We conclude that the trial court erred in holding plaintiff could assert her conspiracy claim [in a vinyl chloride case] based on a product liability cause of action."); *Sonnenreich*, *supra,* 929 F. Supp. at 419 ("a conspiracy to commit negligence is a *non sequitur*.").

Nor can the "intentional tort" claim attempted to be set out in Count 4 serve as the underlying tort for purposes of plaintiff's conspiracy claim.  Merely incorporating all the previous paragraphs of the Complaint and saying that all the conduct pled was "intentional," as plaintiff does here (Compl. at ¶¶ 122-24), does not constitute a valid underlying intentional tort, as required in order to state a claim for conspiracy.[14]

---

*Prods. Liab. Litig.*, 856 F. Supp. 2d 904, 913 (E.D. Ky. 2012) ("A federal court should hesitate to expand the scope of state law without guidance from that state's highest court.").

[14]    Plaintiff also attempts to extrapolate a "conspiracy" from the fact that defendants engaged in lobbying activities and communicated with government agencies.  *See, e.g.*, Compl. at ¶¶ 69(g), 82, 96.  These allegations can provide no basis for plaintiff's conspiracy claim.  Membership and participation in a trade association is not evidence of a conspiracy.  *See Payton v. Abbott Lab*., 512 F. Supp. 1031, 1033 (D. Mass. 1981) ("There is nothing inherently wrong with membership in an industry-wide trade association.").  Further, under the well-established *Noerr-Pennington* doctrine, the exercise of the First Amendment right to petition the government through lobbying efforts cannot form the basis of a conspiracy claim.  *Eastern R.R. Presidents Conf. v. Noerr Motor Freight*, 365 U.S. 127, 137 (1961) (public relations campaign to promote state legislation did not violate federal antitrust law; to hold otherwise would injure the "ability of the people to make their wishes known to their representatives."); *UMW v. Pennington*, 381 U.S. 657, 670 (1965) (*Noerr* "shields … a concerted effort to influence public officials regard-

In sum, without a cognizable intentional tort claim, plaintiff cannot proceed with the conspiracy claim.  For this additional reason, the Court should dismiss Count 6 of the Complaint.

### B.      The Conspiracy Claim Also Fails Because Plaintiff Fails to Identify Particular Defendants and their Alleged Role in the Conspiracy.

Plaintiff's civil conspiracy claim also improperly lumps together the alleged conduct that gives rise to the claim as being against undifferentiated "Defendants," or "the Industry," without tying such conduct to any specific Movant(s) or any specific defendant(s).  (Compl. at ¶¶ 82-98, 128-35.)

The Sixth Circuit, applying *Twombly* in the context of a conspiracy claim, addressed the deficiencies created by the failure to plead sufficient detail in *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008).  There, the plaintiffs alleged an antitrust conspiracy, but their complaint lacked specific allegations detailing each defendant's alleged role in the conspiracy. The Sixth Circuit held that the generic lumping together of the alleged conduct of all the defendants was fatal to the conspiracy claim under *Twombly*:

> Apart from identifying a seven-year span in which the [antitrust] violations were supposed to have occurred (i.e., "[b]eginning as early as February 6, 1996, and continuing to the present,"...) the pleadings mentioned no specific time, place or person involved in the alleged conspiracies.... The complaint here furnishes no clue as to which of the four [defendants] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place.... [A] defendant seeking to respond to Plaintiffs' conclusory allegations … would have little idea where to begin.

522 F.3d. at 436-37 (quoting *Twombly*, 127 S. Ct. at 1970 n. 10).  *See also Prakash v. Altadis U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 46337, *23-25 (N.D. Ohio Mar. 30, 2012) (dismissing con-

---

less of intent or purpose," and even if the purpose is illegal).  *See also Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 147 (1st Cir. 2000) (*Noerr-Pennington* doctrine protects advocacy of positions before administrative bodies); *Senart v. Mobay Chem. Corp.*, 597 F. Supp. 502, 506 (D. Minn. 1984) (*Noerr-Pennington* doctrine applies to conspiracy claims).

spiracy count for lack of required specificity where plaintiff, *inter alia*, failed to allege "which of the defendants specifically entered into such an agreement"); *Stevens v. Saelinger*, 2011 U.S. Dist. LEXIS 10248, *5-7 (E.D. Ky. Feb. 2, 2011) (conspiracy allegations consisting of bare conclusions are not to be accepted as true for purposes of Rule 12(b)6) motion).

Here, by simply attributing all allegedly tortious conduct to "the Industry" and/or undifferentiated "Defendants," plaintiff would compel Movants and other defendants to speculate as to what conduct each is being accused of, when the alleged conduct occurred, and where. Each defendant has the right to address whether the facts, alleged as to it, are sufficient to withstand scrutiny under Rule 12, but has no realistic ability to do so absent the kind of sufficiently detailed pleading required under *Twombly* – but missing here. As such, the conspiracy claim here fails to satisfy the pleading requirements of Rule 8, and the Court should dismiss it.

## C.    The Conspiracy Claim Should be Dismissed for Plaintiff's Failure to Plead with Particularity.

The requirements for pleading conspiracy, especially one purportedly based upon fraud, mirror those for pleading fraud under Rule 9(b) – the "who, what, where and when" are needed to permit Movants a fair opportunity to respond. *See Gordon v. Louisville/Jefferson County Metro Gvt.*, 2012 U.S. App. LEXIS 13417, *17 n.5 (6th Cir. June 28, 2012) ("It is well-settled that plaintiffs must plead a conspiracy with particularity, and must provide more than vague and conclusory allegations."), *aff'g* 2011 U.S. Dist. LEXIS 19631 (W.D. Ky. Feb. 28, 2011) (Simpson, III, J.).

Here, despite the verbosity of the Complaint, it is wholly lacking in particular allegations against particular Movants that would provide the "who, what, when and where" regarding the alleged conspiracy. On this basis as well, the Court should dismiss Count 6 of the Complaint.

D.      **Plaintiff's Conspiracy Claim Is Time-Barred.**

Kentucky statutorily bars a civil conspiracy claim filed more than one year after its accrual.  K.R.S. § 413.140(1)(c).[15]  A conspiracy that "contemplates a series of overt acts is a continuing conspiracy and the statute does not commence to run until the last overt act performed in compliance with the objective of the conspiracy has been accomplished."  *Dist. Union Local 227 v. Fleischaker*, 384 S.W.2d 68 (Ky. Ct. App. 1964).  *See also Liquidating Tr. v. Energy Coal Res., Inc. (In re Appalachian Fuels, LLC)*, 2012 Bankr. LEXIS 4290 (Bankr. E.D. Ky. Sept. 14, 2012) (cause of action for civil conspiracy accrues when the last act in furtherance of the conspiracy occurs) (citing *Bassett v. NCAA*, 2005 U.S. Dist. LEXIS 17570, *6 (E.D. Ky. May 3, 2005)).

Plaintiff sets out 17 paragraphs of allegations purporting to be "Facts Specific to Conspiracy."  (Compl. at ¶¶ 82-98.)  However, the *last* overt "conspiratorial act" alleged occurred in 1975 at *the latest*. (Compl. at ¶ 91.)  Therefore, plaintiff's conspiracy claim is stale by approximately *37 years*.  *See Walker v. Lifeskills Inc*., 1995 U.S. App. LEXIS 24629, *4 (6th Cir. Aug. 18, 1995) (affirming district court for the Western District of Kentucky's dismissal of claim that defendants conspired to violate plaintiff's civil rights, where governed by K.R.S. § 413.140(1)(c)); *Parrish v. Wilson*, 1998 U.S. Dist. LEXIS 23513, *3-4 (W.D. Ky. April 16, 1998) (dismissing conspiracy claim as time barred under K.R.S. § 413.140(1)(c), noting "knowledge of [the last overt act] does not affect the limitations period."); *Szabo v. United Parcel Service, Inc.*, 2004 U.S. Dist. LEXIS 10600, *9 (W.D. Ky. May 24, 2004) (citing *Fleischaker*

---

[15]      "The following actions shall be commenced within one (1) year after the cause of action accrued: (c) An action for malicious prosecution, *conspiracy*, arrest, seduction, criminal conversation or breach of promise of marriage."  K.R.S. § 413.140(1)(c) (emphasis added).

with approval, and holding that plaintiff's common-law conspiracy claim based on age discrimi-nation was time-barred by K.R.S. § 413.140(1)(c)).

Here, in plaintiff's self-enumerated "Facts Specific to Conspiracy," plaintiff acknowledg-es that "after January 1974," the "relationship between angiosarcoma of the liver and VC expo-sure" was "publicized." (Compl. at ¶ 90; *see also id*. at ¶ 69(h).)  Therefore, after January 1974, the alleged conspiracy to misrepresent and conceal the hazards of VC was necessarily at an end. Likewise, the last claimed misrepresentation by "Industry" purportedly occurred in 1974.  (*Id*. at ¶ 96.)  The governing one-year statute of limitations for conspiracy expired long ago.  This is sufficient by itself to mandate dismissal of Count 6 of the Complaint.

## V.   PLAINTIFF'S "CLAIM" FOR PUNITIVE DAMAGES FAILS.

Finally, in Count 7, plaintiff advances a "claim" for punitive damages.  Count 7 of the Complaint attempts to cast plaintiff's prayer for punitive damages as an independent claim. Kentucky does not recognize punitive damages as an independent cause of action, and the Court should dismiss Count 7 for this reason.  *See Ammon v. Welty*, 113 S.W.3d 185, 188 (Ky. Ct. App. 2002) (claim for punitive damages precluded by plaintiff's failure to assert claim on which actual damages could be awarded).  Therefore, as with the other claims here, Count 7 must be dis-missed for failure to state a claim.

## <u>CONCLUSION</u>

For all the above reasons, each of plaintiff's claims is defective and subject to dismissal for failure to state a claim on which relief may be granted.   Therefore, the Court should dismiss the Complaint as against the Movants with prejudice.

Respectfully submitted,

*/s/ Timothy J. Coughlin*

Edward H. Stopher (68370)
BOEHL STOPHER & GRAVES LLP
2300 Aegon Center,
400 West Market Street
Louisville, Kentucky  40202
Phone:  502-589-5980
Fax:  502-561-9400
*estopher@bsg-law.com*

-and-

Timothy J. Coughlin (*admitted pro hac vice*)
Thomas L. Feher      (*admitted pro hac vice*)
William J. Hubbard   (*admitted pro hac vice*)
Andrea B. Daloia      (*admitted pro hac vice*)

THOMPSON HINE LLP
3900 Key Center, 127 Public Square
Cleveland, OH  44114-1291
Phone:  216-566-5500
Fax:  216-566-5800

*Timothy.Coughlin@ThompsonHine.com*
*Tom.Feher@ThompsonHine.com*
*William.Hubbard@ThompsonHine.com*
*Andrea.Daloia@ThompsonHine.com*

*Attorneys for Defendants*
*American Chemistry Council, Georgia Gulf*
*Corp., Goodrich Corp., PolyOne Corp., PPG*
*Industries, Inc. and Shell Oil Co.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of January, 2013, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send electronic notice to all counsel of record.

/s/ *Timothy J. Coughlin*
*Attorney for Defendants*
*American Chemistry Council, Georgia Gulf Corp.,*
*Goodrich Corp., PolyOne Corp., PPG Industries,*
*Inc. and Shell Oil Co.*

11709303.18