UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


PAMELA M. EASTRIDGE, Executrix
of the Estate of Joseph E. Morris, Jr.                                   PLAINTIFF


v.                                                   CIVIL ACTION NO. 3:12CV-862-S


GOODRICH CORPORATION, et al.                                     DEFENDANTS


## MEMORANDUM OPINION AND ORDER


This matter is before the court for consideration of the following motions:

> (1) The motion of the defendants, American Chemistry Council, Georgia Gulf Corp., Goodrich Corp., PolyOne Corp., PPG Industries, Inc., and Shell Oil Co., to strike the revised amended complaint. (DN 162).
>
> (2) Motion of the defendant, Society of the Plastics Industry, Inc., to dismiss the revised amended complaint for lack of personal jurisdiction. (DN 163).
>
> (3) Motion of the defendants, American Chemistry Council, Georgia Gulf Corp., Goodrich Corp., PolyOne Corp., PPG Industries, Inc., and Shell Oil Co. to dismiss the revised amended complaint. (DN 164).[1]

---

1 Defendant Chevron U.S.A., Inc. has been permitted to join in the motion of the American Chemistry Council, *et al.*, to dismiss. (DN 164). In its joinder, Chevron also files its own memorandum addressing grounds for dismissal. (DN 168). Those arguments are also addressed herein, despite the lack of a separate motion to dismiss. The motion to dismiss (DN 164) is also joined by: Air Products and Chemicals, Inc., Chevron U.S.A., Inc., ConocoPhillips Company, The Dow Chemical Company, EPEC Polymers, Inc., f/k/a Tenneco Polymers, Inc., Ethyl Corporation, Georgia-Pacific, LLC, The Goodyear Tire & Rubber Company, Gulf Oil Limited Partnership, Honeywell International Inc., Linde LLC (f/k/a The BOC Group, Inc. f/k/a named defendant Airco, Inc.), Momentive Specialty Chemicals, Inc., Monsanto Company, Occidental Chemical Corporation, Olin Corporation, Sasol North America, Inc., The Society of the Plastics Industry, Inc., Tenneco, Inc., and Union Carbide Corporation. (DN 164, p. 6, fn. 1).

(4) Motion of the defendant, Society of the Plastics Industry, Inc., to dismiss the revised amended complaint for failure to state a claim for relief. (DN 166).

(5) Request of defendant Society of the Plastics Industry, Inc., for judicial notice in support of its motion to dismiss the revised amended complaint for failure to state a claim for relief. (DN 167).

(6) Joinder of defendant Chevron U.S.A. Inc., in motion to dismiss and memorandum in support of defendants The American Chemistry Council et al. and supplemental memorandum in support. (DN 168).

(7) Motion of the defendant, Linde, LLC f/k/a the BOC Group, Inc. f/k/a named defendant Airco, Inc., to dismiss plaintiff's revised amended complaint. (DN 169).

(8) Motion of the plaintiff, Pamela M. Eastridge, Executrix of the Estate of Joseph E. Morris, Jr. for leave to file a surreply in opposition to defendant's motion to strike. (DN 189).

(9) The motion of the defendants, Society of the Plastics Industry, Inc., to strike the response of the plaintiff, Pamela M. Eastridge, Executrix of the Estate of Joseph E. Morris, Jr., to SPI's notice of supplemental authority in support of its motion to dismiss the revised Amended Complaint. (DN 201).

## I. Factual Background

Eastridge alleges that the decedent, Joseph E. Morris, Jr., was exposed to polyvinyl chloride ("PVC") and PVC-containing products from 1964 until 1980 during his employment with Goodrich Corporation. Morris worked at the B.F. Goodrich Plant in Louisville, Kentucky from approximately 1964 to 2005.

Vinyl chloride ("VC") is a man-made compound processed into PVC. The Complaint alleges that as a result of his exposure to VC, Morris developed cancer of the liver (angiosarcoma). He was purportedly diagnosed with chemical exposure-related

angiosarcoma in June 2011 and died in November 2011.

Morris' Executrix, Eastridge, filed this action in the Jefferson County, Kentucky, Circuit Court on November 26, 2012 naming twenty-seven defendants. The action was removed to this court under our diversity jurisdiction, as none of the defendant entities is a citizen of Kentucky.

There have been a number of iterations of the Complaint to date. We address the motions to dismiss herein with reference to the Second Revised Amended Complaint (SRAC)(DN 179).

## II. Analysis

### A.

We find that oral argument on the pending motions is unnecessary. The matters have been fully briefed, and we find the issues relatively straightforward. Therefore, the parties' requests for oral argument, made as a matter of course in each motion filed, will be denied.

### B.

The motion of the defendant, Chevron U.S.A., Inc., to join in the motion of defendants American Chemistry Council, *et al.*, to dismiss the revised amended complaint (DN 168) is **GRANTED.**

C.

The motion of the plaintiff, Pamela M. Eastridge, Executrix of the Estate of Joseph E. Morris, Jr., for leave to file a surreply in opposition to defendant's motion to strike (DN 189) is **GRANTED.** The surreply indicates that Eastridge believes the SRAC complies with the court's orders and is as streamlined a document as she is capable of producing.

D.

The plaintiff filed the SRAC pursuant to an order of this court requiring her to do so. (DN 178). The SRAC does not redact much from the complaint. The defendants have aptly noted that it is not the job of the court to "excavate masses of papers in search of revealing tidbits."[2] As such, we will address the content of the SRAC only to the extent indicated by plaintiff's response to the motions to dismiss (Consolidated Response, DN 187).

The motion of the defendants, American Chemistry Council, Georgia Gulf Corp., Goodrich Corp., PolyOne Corp., PPG Industries, Inc., and Shell Oil Co., to strike the revised amended complaint (DN 162) is **DENIED.** While these defendants seek to challenge the redaction of the SRAC as a whole, the court will address, instead, the sufficiency of the claims to withstand dismissal under *Iqbal* and *Twombly*.

---

2 *Northwestern Nat'l Ins. v. Boltes*, 15 F.3d 660, 662-663(7th Cir. 1994).

E.

The motion of the defendant, Society of the Plastics Industry, Inc. ("SPI"), to strike the response of the plaintiff to SPI's notice of supplemental authority in support of its motion to dismiss for lack of jurisdiction (DN 201) is **DENIED.**

The response of the plaintiff addresses SPI's assertion that it does not have sufficient contacts with Kentucky for this court to exercise personal jurisdiction over it. SPI has raised the issue of personal jurisdiction long after its active engagement with the other defendants in addressing the sufficiency of the various iterations of the complaint. We conclude that there is no prejudice to SPI inasmuch as SPI has addressed the matters raised in Eastridge's response. The court prefers to decide such issues on a fulsome record.

F.

For the following reasons, the motion of the American Chemistry Council, *et al.*, to dismiss the revised amended complaint (DN 164) is **GRANTED IN PART AND DENIED IN PART, as set forth below**. The motion to take judicial notice of public documents filed in support of the motion of the defendant, SPI (DN 167) is **GRANTED.** The motion of the defendant, SPI, to dismiss the revised amended complaint (DN 166) is **DENIED.**

To overcome a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). As explained in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009),

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [*Twombly, supra.*] at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*., at 557, 127 S.Ct. 1955 (bracket omitted).

### (1) Counts II and VI of the SRAC

The court noted in the September 30, 2013 memorandum opinion that

In order to state a claim under a "concert of action theory, a plaintiff must set forth three elements: First, plaintiffs must identify the product causing the harm and prove that the defendants' acts in marketing and promoting the allegedly defective product were a substantial factor in causing the plaintiff's injuries…Second, plaintiffs must establish that the defendants acted by cooperative or concerted activities…Finally, plaintiffs must prove defendants contravened a particular standard of care. *Dawson v. Bristol Labs*, 658 F.Supp. 1036, 1039-40 (W.D.Ky. 1987). The plaintiff alleged the defendants manufactured and supplied VC which caused Morris' death and that they failed to adequately warn of the dangers of VC. Eastridge alleges that the defendants agreed to withhold information, and did so, such that they failed to adequately warn. Finally, Eastridge alleges that the defendants were negligent in failing to warn of the dangers of VC of which they were or should have been aware, and breached implied warranties with respect to the product. The plaintiff may or not ultimately be able to prove "concert of action." However, her allegations are sufficient under Kentucky caselaw to permit the filing of the claim. The sufficiency of the factual allegations in light if *Iqbal* and *Twombly* may be revisited, if appropriate, upon the filing of the redacted Amended Complaint.

DN 155, p. 7.

The defendants now challenge the sufficiency of the claim under the *Iqbal/Twombly* standard.

Eastridge agrees to the dismissal of the concert of action claim as to Sasol North America, Inc., EPEC Polymers, Inc. f/k/a Tenneco Polymers, Inc, as these companies were not in existence during the period 1964 to 1980, the period of time during which Morris was allegedly exposed to VC. PolyOne is sued as the successor to Goodrich, and thus is not entitled to dismissal on the same ground. A review of the SRAC reveals that PolyOne was identified as successor to Goodrich in ¶ 2(a) of the SRAC. Further, ¶ 2(a) states that the B.F.Goodrich Company, the Geon Company, PolyOne Corporation, and Goodrich Corporation are referred to collectively in the SRAC as "B.F. Goodrich." The motion to dismiss will be denied as to PolyOne Corporation.

The remaining defendants seek dismissal of the claim alleging concert of action, as they contend that there is no discernment in the SRAC as to each alleged actor's purported substantial assistance to the manufacturer/supplier defendants in the commission of the alleged product liability torts against Morris.

While the court's earlier memorandum opinion acknowledged the theory of concert of action as a recognized cause of action in this context, the court left open the possibility of a more particularized analysis as to the sufficiency of the claim under *Iqbal* and *Twombly*.

The parties all acknowledge that allegations of parallel activity are insufficient to state a concert of action claim. *Dawson v. Bristol Laboratories*, 658 F.Supp. 1036, 1040 (W.D.Ky. 1987). Eastridge specifically states in the SRAC that "The trade associations

and other defendants are each sued solely based upon their own tortious acts. No party is sued on the mere basis of attendance at trade association or scientific meetings or for merely belonging to a trade association." DN 179, p. 7.³ Upon closer analysis of the claim and the extensive facts in support, the court concludes that the allegations contain more than mere allegations of parallel activity sufficiently identify the alleged conduct of each defendant and the purported concerted action undergirding the theory.

Count II of the SRAC is the conspiracy claim retitled "Acting In Concert Claims." In fact, within the many pages of allegations of misconduct allegedly beginning in the 1950s, she summarizes that "The conspiracy among the defendants was intended to misrepresent and conceal material facts about the nature and extent of the risks of exposure to vinyl chloride and vinyl chloride-containing products from Morris and all other vinyl chloride workers and fabricators." DN 179, p. 69, ¶ 201. She goes on to allege that "The conspiracy involved the common design, substantial assistance and mutual understanding among all the conspiring defendants that the co-conspirators would misrepresent and conceal material facts…" DN 179, p. 69, ¶ 202. Count II will not be recognized as stating a claim for civil conspiracy, as that claim was previously dismissed as untenable. However, to the extent that the facts stated therein support claims of acting in concert, as so captioned, Count II will not be dismissed.

Count VI is entitled "Acting In Concert with the Manufacturer/Supplier Defendants in the Commission of the Breach of Duty to Warn, Products Liability Violations and Breach of Implied Warranty." DN 179, p. 77. In this count, Eastridge

---

3 Eastridge then proceeds to itemize the ways in which the defendants "aided and abetted each other." *Id.* The court dismissed the complaint to the extent that it alleged aiding and abetting, as there is no tort of aiding and abetting recognized in Kentucky. DN 155, p. 8.

states that "The defendants gave substantial assistance and encouragement to the Manufacturer/Supplier defendants in their commission of the tortious misconduct." DN 179, p. 78, ¶ 245. She states that the "substantial assistance" provided by the defendants the Manufacturer/Supplier defendants included but is not limited to (1) deliberately limiting the warnings in SD-56 to fire, explosion and risk of burns…, (2) deliberately failing and refusing to provide accurate, complete and adequate warnings…, (3),(4), and (5) deliberately failing to conduct tests and investigations, (6) deliberately failing to conduct epidemiological investigations… DN 179, p. 78.

The SRAC alleges that the chemical data safety sheet known as SD-56 was drafted by the Manufacturing Chemists Association (now known as the American Chemical Council) *in 1953* and that, despite known information as to the hazards of VC exposure, SD-56 stated that 500 ppm was an accepted and safe exposure limit and that the only hazards from VC were fire, explosion, frostbite burns and a mild general anesthesia. SRAC, p. 10, ¶ 20.

The SRAC states in the next paragraph (SRAC ¶ 21) that "*The defendants* agreed to disseminate SD-56, and nothing contrary to SD-56, in order to conceal the hazards of vinyl chloride from workers, including Morris." While this allegation is conclusory, the SRAC continues on for some fifty pages reciting purported acts or alleged failures to act by various defendants relating to various studies, meetings, and publications from 1953 through the 1980s. Eastridge sweeps all of the defendants into somewhat non-specific allegations of *concerted action* in the failure to provide accurate and complete warnings and failure to conduct test or investigations (DN 179, Count VI), concluding that that this

conduct constituted substantial assistance and encouragement to the Manufacturer/Suppliers in causing the injury and death of Morris. *Id.* However, the SRAC recites voluminous facts as to discrete events that purportedly evidence each defendant's involvement in the bigger picture -- concerted action to assist and perpetuate the industry-wide common design and understanding to misrepresent and/or conceal material facts about the hazards of VC.

The defendants argue that SRAC does not connect the dots to establish concerted action on the part of each individual defendant. It is not so much that the SRAC, as a document, lacks particularity – there is plenty of particularity concerning individual events and developments in the chemical industry which occurred over a thirty-year period. Rather, it is the purported lack of any factual specificity concerning the defendants' involvement in a common design and the rendering of substantial assistance to the manufacturer/supplier defendants. The defendants contend that Eastridge throws all of the purported acts and failings in a SRAC, with the recitation of generalities concerning common design against all defendants named in the SRAC.

The defendants cite repeatedly to *Smith v. Univar USA, Inc.*, No. 12-134-ART, 2013 WL 1136624 (E.D.Ky. Mar. 18, 2013). There, the court stated

> Under a concert of action theory, the plaintiffs can hold the defendants jointly and severally liable if they prove the defendants (1) acted unlawfully by common design; (2) knew that a codefendant was acting unlawfully and gave substantial encouragement to the codefendant; or (3) gave substantial assistance to a codefendant's unlawful acts, when the defendant's conduct was also unlawful. *Peoples Bank of N. Ky., Inc.*, 277 S.W.3d at 261 (citing *Farmer v. City of Newport*, 748 S.W.2d 162 (Ky.App. 1988)). Allegations of parallel activity are insufficient to state a concert of action claim. *Dawson v. Bristol Laboratories*, 658 F.Supp. 1036, 1040 (W.D.Ky. 1987). The complaint does not contain any

factual allegations that state a plausible claim against the defendants under any of those three theories. *See Twombly*, 550 U.S. at 570 (a complaint must contain "enough facts to state a claim to relief that is plausible on its face"). Nor do the plaintiffs' allegations "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Id.* at 555 (citation omitted). First, the plaintiffs assert that the defendant acted "pursuant to a common design." R. 71 at 31 ¶ 86(a). But, as noted above, there are no facts in the complaint suggesting an agreement or common design between the defendants. Second, the plaintiffs assert that the defendants "[k]new that the actions of the [co-defendants] in hiding…the risks of [TCE and TCA]…were breaches of duty…and gave substantial assistance" to the co-defendants. R. 71 at 31 ¶ 86(b). But the plaintiffs' allegations do not describe what substantial assistance each defendant gave the other defendants. And, third, the plaintiffs argue that the defendants "[g]ave substantial assistance to [their co-defendants] in manufacturing and selling TCE and TCA without proper warnings, and independently engaged in "conduct which was a breach of duty to [the] plaintiffs." R. 71 at 31 ¶ 86(c). But again, the complaint does not adequately put the defendants on notice because the plaintiff did not present facts explaining how each defendant's conduct substantially assisted its co-defendants. And while each defendant's research (or government testimony) may have justified the other defendants' inadequate warnings, R. 71 at 31-32 at ¶ 88, it is not clear what duty *to the plaintiffs* the defendants breached by this conduct. Thus the plaintiffs' concert of action claim must be dismissed.

This case can be readily distinguished from *Smith*, however, as the Complaint in that case lacked the specificity that is contained in the SRAC. The SRAC more than adequately puts the defendants on notice as to the particular conduct that allegedly renders them concerted actors. Whether Eastridge is able to ultimately establish an agreement or understanding and substantial assistance to the manufacturer/suppliers remains to be seen. However, Eastridge has satisfied the *Iqbal/Twombly* standard by offering sufficient detail in her allegations to elevate the claim from possible to probable.

Eastridge points to a number of allegations, particularly ¶¶ 46, 47, 48, 78, 99, and 116, purportedly evidencing knowledge and suggesting that the defendants formed an

agreement "to conceal and/or misrepresent and/or fail to warn about the harmful effects of VCM." A review of the cited paragraphs reveals the following:

  a. Paragraph 46 relates to a December 7, 1974 meeting attended by some but not all of the defendants where a public relations firm was ordered to publish a pamphlet for PVC workers assuring them that they were not exposed to hazardous levels of VC even though the defendants knew this was inaccurate.

  b. Paragraph 47 relates to an August 21, 1974 Senate hearing on VC where a number of defendant's representatives allegedly testified falsely as to the historical knowledge concerning VC hazards.

  c. Paragraph 48 relates to a July 16, 1976 writing by the chairman of the CMA and SPI vinyl panels indicating that the Technical Task Group had decided earlier not to revise SD-56.

  d. Paragraph 78 relates to a July 30, 1974 meeting of the MCA Vinyl Chloride Research Coordinators, with a handful of defendants represented, who voted to abandon animal studies to find a no effect VC exposure level.

  e. Paragraph 99 relates to the circulation of a Dow Chemical position paper concerning recently discovered brain tumors to the PVC Safety Group on March 5, 1979 which was not disclosed to workers.

  f. Paragraph 116 relates to a meeting on May 8, 1989 of SPI and the Vinyl Institute Health Safety and Environmental Committee where some but not all of the defendants were represented and where it was agreed to terminate the angiosarcoma

registry purportedly to conceal the fact that VC was causing angiosarcoma in PVC fabricators.

As can be seen from these allegations identified by Eastridge in her responsive brief as representative of the many facts, she seeks to weave together individual acts by various defendants who came together and purportedly acted in agreement at various times and places and over a long period of time to suggest an overarching "concerted action." The recitation of the individual defendants' purported acts (such as the alleged June, 1974 decision at the MCA Vinyl Chloride Research Coordinators meeting to abandon animal studies) put the defendants on notice as to how they each purportedly provided substantial assistance therein.

Additionally, the SRAC sufficiently alleges that Morris relied on the purported misinformation, as Morris was allegedly provided various written information concerning the effects of VC, including SD-56, and training at Goodrich was allegedly based upon the information provided. DN 179, ¶¶ 24, 175.

The motion to dismiss the claims alleging concert of action will be denied.

(2)

The defendants seek dismissal of Counts III, IV, and V on the ground that they fail to state product liability claims upon which relief may be granted.

13

a.

Goodrich contends that it is entitled to dismissal on the ground that it is immune from suit because it participated in the Kentucky Workers Compensation system.

Goodrich has provided documentation of its participation in the program during the period of time that Morris was allegedly exposed to VC. Morris was allegedly exposed to VC at Goodrich from 1964 to 1980. He was not diagnosed with angiosarcoma until 2011. By that time, the statute of repose contained in KRS 342.316(4) barred Morris from filing a claim. However, the Kentucky courts have held that there is no constitutional impediment to the repose provision of five years from the last injurious exposure to the occupational hazard. *Wright v. Oberle-Jordre Co., Inc.*, 910 S.W.2d 241, 243 (Ky. 1995), *quoting William A. Pope Co. v. Howard*, 851 S.W.2d 460 (Ky. 1993); *Blanton v. Cooper Industries, Inc.*, 99 F.Supp.2d 797 (E.D.Ky. 2000).

Eastridge has urged that Goodrich may not rely on the immunity provided by workers compensation participation, as it intentionally violated OSHA and KOSHA standards. This argument was addressed by the Kentucky Supreme Court, however, in *Moore v. Environmental Construction Corp.*, 147 S.W.3d 13 (Ky. 2004), holding that the employer's "violation of OSHA regulations and acknowledgement of the possible consequences does not amount to a deliberate intention to produce [decedent's] death," and the employer was entitled to the immunity of the exclusive remedy provision of the Kentucky Workers Compensation Act.

For this reason, B.F.Goodrich and its successors will be dismissed from the action.

The defendants urge that the complaint fails to state a claim for breach of implied warranty, as such claim is subsumed in a strict liability claim. The proof required to establish strict liability does, in, fact, subsume the warranty claim. Count V will be dismissed.

The defendants also argue that the SRAC "improperly lumps together" purported pre-1974 conduct with purported post-January 1974 conduct and thus fails to meet the *Iqbal/Twombly* standard for stating a viable claim.

As described by the defendants, in January, 1974 a "watershed event" occurred when the hazards of long-term high-level occupational exposure to VC became widely known and published. In April, 1974, an Emergency Temporary Standard for occupational exposure was issued (39 Fed.Reg. 12,342), and a Permanent Standard followed in June of the same year.

The defendants contend that the failure of the SRAC to differentiate as to the liability for failure to warn and strict product liability before and after the publication of VC dangers renders the product liability claims insufficient under *Iqbal/Twomby*. The court rejects this contention.

The SRAC adequately alleges that the Manufacturer/Suppliers supplied VC, allegedly unreasonably dangerous due to its design and due to the lack of warnings, that Morris was a foreseeable user of the product, and that VC caused his death. It is also alleged that these defendants knew that VC was unreasonably dangerous and defective, and that they failed to warn and breached certain warranties with respect to the product. The fact that widespread knowledge as to the dangers of VC may have changed the

15

ultimate impact of the defendants' acts does not render the product liability claims infirm. The motion to dismiss Counts III, IV, and V on this basis will be denied.

(3) Summary

For the reasons stated hereinabove, the motion of the American Chemistry Council and joining defendants to dismiss (DN 164) is **GRANTED AS TO DEFENDANTS SASOL, EPEC AND TENNECO AND B.F. GOODRICH, AND ITS SUCCESSORS, THE GEON COMPANY, POLYONE CORPORATION, AND GOODRICH CORPORATION, and the Second Revised Amended Complaint is dismissed as to each of them.** Count V alleging breach of implied warranty is **DISMISSED.** In all other respects, the motion is **DENIED.**

G.

The motion of the defendant, Linde, LLC f/k/a The BOC Group, Inc. f/k/a named defendant Airco, Inc. to dismiss plaintiff's revised amended complaint (DN 169) and Supplemental Memorandum of Chevron (DN 187) are **GRANTED,** and the Second Revised Amended Complaint (DN 179) is **DISMISSED AS TO EACH OF THEM**.

Eastridge did not reply to the motions to dismiss of these parties. She chose instead to file one consolidated response brief (DN 187), noting that "Because of the similarity in the Defendants' pending motions, Plaintiff files this brief in opposition to all pending Motions to Dismiss." DN 187, fn. 7.

These defendants adopt the 12(b)(6) "sufficiency" arguments made by the other defendants. However they also assert that, unlike the other defendants, they are simply not alleged in the SRAC to have been participants any of the alleged misconduct. The court's review of the portions of the SRAC cited by Eastridge finds no allegations against Airco, or Chevron. Thus they are entitled to dismissal.


**IT IS SO ORDERED.**

September 30, 2014

**Charles R. Simpson III, Senior Judge**
**United States District Court**